BEN. A. MATTHEWS, as trustee in bankruptcy of the Pope Trading Corporation, bankrupt, complainant,

*v.*

BESSIE POPE and JAMES E. POPE, defendants.

[Decided July 25th, 1923.]

1. A corporation's transfer of its property to its sole stockholder in exchange for notes of another corporation of which the transferee was the principal stockholder, with knowledge on the part of the transferee that both corporations were hopelessly insolvent, *held* void as to creditors of the first corporation.

2. A director of a corporation is chargeable with knowledge of the financial condition of the corporation.

3. The sole stockholder of a corporation is chargeable with notice of the financial condition of the corporation.

4. Under section 64 of the Corporation act an insolvent corporation's transfer of all its property to its sole stockholder, with knowledge on the part of the stockholder of the insolvent condition of the corporation, is void as to the corporation's creditors, the stockholder not being a *bona fide* purchaser for value.

On final hearing.

*Mr. Gustave L. Goldstein* and *Mr Harvey P. Mann* (of the New York bar), for the complainant.

*Messrs. Carrick & Wortendyke* (*Mr. Charles L. Carrick*), for the defendants.

BACKES, V. C.

This suit is by the trustee in bankruptcy of the Pope Trading Company to reach real estate in Hudson county, this state, belonging to the company and conveyed by James E. Pope to his sister, Bessie Pope. At the time of the conveyance, James E. Pope held the title to the property in trust for the trading company. The Pope Trading Company and the Pope Metals Company were New York corporations. The trading company was engaged in foreign trade and the metals company in domestic trade in the metals market. James E. Pope managed and dominated the business of both. Both companies were adjudged bankrupts in March, 1922. Bessie Pope owned the trading company. She was the sole stockholder. She was also owner of fifteen hundred of the twenty-five hundred shares of stock of the metals company. She had loaned the metals company $25,000, for which she took demand notes. She transferred these notes to the trading company and for which James E. Pope conveyed to her the property of the trading company of the value of about $25,000, by deed dated September 30th, 1921. At that time both the trading company and the metals company were insolvent. The property turned over to Bessie Pope was the only available and valuable asset the trading company had. The notes she exchanged for it were uncollectible and worthless. The metals company was hopelessly insolvent, not only in the sense in which insolvency is defined by our court—a general inability to meet current obligations by available assets or an honest use of credit—but also in the sense that its liabilities far exceeded its assets. The metals company could not pay its debts. It had not the cash or other means, and, as James E. Pope said, it had not credit at the banks because the banks

had "shut down" on it. Its insolvency was also certified by a recital in an agreement of the parties made at the time of the conveyance, wherein the conveyance of the trading company's property for the metals company's notes was sought to be justified, to the effect that the metals company was unable to meet its obligations and unable to pay Bessie Pope $25,000 admittedly due her. A comparison of liabilities and assets shows hopeless insolvency. Comparing the book value assets with the irreducible liabilities—not book liabilities but actual liabilities—and eliminating from the book values accounts included therein as assets that should have been struck off because the debtors were bankrupts, it is found that the liabilities are far in excess of the assets. The trading company was no better off. It owed $93,000 besides a debt to the American Manganese Company of about $15,000, as I recall, which was later reduced to judgment, and a large amount due to the federal government for taxes. To meet this it had but $961 in bank, the worthless metals company notes of nearly $200,000 and accounts receivable of $41,000, much of which was uncollectible, and some stocks and bonds and other tangible property which sold for a few hundred dollars.

The contention that the conveyance of the trading company's property for the worthless notes of the metals company was a *bona fide* sale is absurd. Bessie Pope knew as well as her brother that her notes were without value. As the owner of the trading company and the major owner of the metals company she must have known of their insolvency. If not, I am inclined to think that she is chargeable, in law, with notice. I am not holding that a stockholder, as such, is chargeable in law with knowledge of the condition of his company. A director is, and I see no reason why a stockholder in a close corporation should not be, where, as here, the stockholder and the company are one and the same. But be that as it may, Bessie Pope had actual knowledge of the insolvency of the metals company because her brother told her the company could not pay her debt, and he told her why it could not. As the sole owner of the trading company she

was charged with knowledge of its precarious and hopeless condition. It is argued that Bessie Pope is a woman inexperienced in business, that she was guided entirely by her brother's advice and that she surrendered her notes for the land in perfect good faith. Granting that, the answer is that she gave no value in return, and she knew it. She went through the form of buying from her own company without giving to the company anything of value. But I am not ready to accept the assertion of her innocence in the scheme. When the crash was imminent her brother inspired her to make demand upon him for payment; to consult her counsel and have him make formal letter demand; to negotiate with him (her brother) not for the money which was due her and which he knew she could not collect, but for and to salvage, at the expense of the creditors of the trading company—her own company— its last bit of property of value. James E. Pope at the time was living with his sister. Why, if this was an honest purchase, should she consult counsel for the single purpose of having him make formal demand for her debt? Why should James E. Pope exact official notification of his sister's demand, and then—having "persuaded" his sister Bessie to take the only thing the trading company had in payment of the worthless metals company notes—have it certified in the agreement already referred to that this peculiar transaction was due to the precarious condition the trading company would be in, because of its large holdings of the metals company notes, if Bessie Pope should force payment from the metals company? The pains of formality spells insincerity. The fraud is so plainly obvious—even, it must be to a woman—that I fail to see how Bessie Pope can be absolved of the charge of active participation.

The appropriation by her of the only asset of the corporation that amounted to anything for the valueless and worthless notes of the metals company was a palpable fraud upon the creditors of the trading company. The deed must be set aside on the ground of fraud upon the creditors of the trading company.

There is another reason why the deed must go down.   Section 64 of the Corporation act (*Comp. Stat. p. 1638*) provides that:

"Whenever any corporation shall become insolvent or shall suspend its ordinary business for want of funds to carry on the same, neither the directors nor any officer or agent of the corporation shall sell, convey, assign or transfer any of its estate, effects, choses in action, goods, chattels, rights or credits, lands or tenements; nor shall they or either of them make any such sale, conveyance, assignment or transfer in contemplation of insolvency, and every such sale, conveyance, assignment or transfer shall be utterly null and void as against creditors; provided, that a *bona fide* purchase for a valuable consideration, before the corporation shall have actually suspended its ordinary business, by any person without notice of such insolvency or of the sale being made in contemplation of insolvency, shall not be invalidated or impeached."

The trading company, as already said, was insolvent at the time the deed was made, and to the knowledge of Bessie Pope, and she does not therefore come within the proviso as a *bona fide* purchaser for value.

I will advise a decree that Bessie Pope holds the property in trust for the trading company and that she convey it to the company.   Or if, under the federal law, title passes to the trustee, as it does to receivers under our Corporation Insolvency law, then she will be ordered to convey to the trustee. She must account for the rents, issues and profits from September 30th, 1921.   The increments, if there were any, were fraudulently obtained.   Costs and counsel fee of $500.